Before the Second Division, September 12, 1957

**No. 61197.**—Carson M. Simon & Co. *v.* United States, protests 237338–K and 237339–K (Philadelphia).

Rao, Judge: Several importations of jute twine, entered at the port of Philadelphia, were classified by the collector of customs within the provisions of paragraph 1003 of the Tariff Act of 1930, as jute twine, treated, and, accordingly, were assessed with duty at the rate of 3½ cents per pound and 2 cents per pound.

In the instant protests, which were consolidated for the purposes of trial, plaintiff alleges that said merchandise has not been bleached, dyed, or otherwise treated, within the contemplation of said paragraph 1003, and, hence, is not subject to the additional duty of 2 cents per pound therein provided. The propriety of the

assessment of the basic rate of 3½ cents per pound on the twine in issue is not here questioned.

Paragraph 1003 of the Tariff Act of 1930, insofar as here pertinent, provides as follows:

* * * twist, twine, and cordage, composed of two or more jute yarns or rovings twisted together, the size of the single yarn or roving of which is coarser than twenty-pound, 3½ cents per pound; * * * and in addition thereto, on any of the foregoing twist, twine, and cordage, when bleached, dyed, or otherwise treated, 2 cents per pound.

The evidence in this case consists of an official sample of the imported product, together with the deposition of Marcel Relin, one of the managers of Saint Frères, Société Anonyme, of Paris, France, the manufacturer and shipper of the merchandise at bar, taken pursuant to a commission issued by order of this court. His description of the process of manufacture of the jute twine at bar, with which he was personally familiar, may be briefly summarized as follows:

Raw jute is passed successively through a series of machines called chain breaker or softening machine, breaker card, finishing card, drawing machine, spinning frame, twisting machine, and polishing machine. As the jute passes through the rollers of the chain breaker, it is sprayed with an emulsion of oil, starch, and water to make it more pliable. As it leaves the chain breaker, the jute is soft and moist. It is allowed to stand for at least 48 hours, so that the emulsion may thoroughly permeate the fiber. It then enters the breaker card, which combs and parallelizes the fiber to some extent, and removes bark and short pieces of fiber. From the breaker card, the jute passes to the finisher card. There, nine breaker slivers are amalgamated into a more refined ribbon of fiber. This is further refined by the drawing frame, where two or more slivers are combined and a more thorough blending of the fiber is effected.

The drawing frame sliver is twisted into yarn by the spinning frame. Then, the twisting machine takes three bobbins of single yarn and twists them into a ply yarn. The last process is in the polishing machine where starch, dextrine, and wax are added to polish the twist yarn and to give it a smooth finish. No other treatment is applied, and the twine is not bleached, dyed, waterproofed, or mildew-proofed.

Although the witness asserted that "jute twine" is a commercial, not a technical, term, which refers to a polished jute twist, it is not disputed that the jute article here in issue has been polished.

A contention that the polishing of jute twist to convert it into jute twine was not a process contemplated by the phrase "otherwise treated" in said paragraph 1003, was considered, but rejected, in the case of *James F. White & Co.* v. *United States*, 23 C. C. P. A. (Customs) 224, T. D. 48061, wherein the court specifically held "that the polishing process is embraced in the words 'otherwise treated' in said paragraph." In reaching that conclusion, the court reasoned, from the dictionary definitions of the words "twist" and "twine" and an excerpt from the Summary of Tariff Information, 1929, indicating that twine was ply yarn "harder twisted" than twist, that Congress "did not contemplate that a polishing process was necessary to convert twist into twine."

Counsel for plaintiff herein has, to all intents and purposes, acknowledged the controlling effect of the *White* decision, *supra*. The brief submitted by him consists of the following statement only:

In view of the decision in the case of *James F. White & Co.* v. *The United States* 23 CCPA (Customs) 224, T. D. 48061, and in view of the answers by the witness M. Relin to Direct Interrogatory questions numbers 22, 23 and 25, we shall make no further argument in this case.

The answers referred to as numbers 22, 23, and 25 establish the fact of a polishing process, during which starch, dextrine, and wax are added.

We apprehend no reason for challenging the authority of the principle expressed in the decided case, which we hold to be dispositive of the matter before us. All claims of the plaintiff are, therefore, overruled.

Judgment will be entered accordingly.